NO. 12-01-00147-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


GLENN WELLS,
§
 APPEAL FROM THE SEVENTH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 A jury convicted Appellant Glenn Wells of manufacture of a controlled substance. Appellant
pleaded "true" to two enhancement paragraphs charging him as an habitual offender, and the trial
court sentenced him to thirty years in prison. In two issues, Appellant challenges the legal and
factual sufficiency of the evidence. We affirm.


Background

 In late December of 1999 or early January of 2000, Appellant rented a trailer house from Dan
Edmonds ("Edmonds") in rural Smith County. The trailer was located on the same thirty-acre tract
as Edmonds' home and a second trailer house which Edmonds also used as rental property. 

 Edmonds noticed that for the first couple of months, Appellant and his female housemate,
Vicki Combs ("Combs"), came and went from their trailer on a schedule such as people working
during normal business hours would keep. In mid-February of 2000, another man and woman came
and stayed with Appellant and Combs for about two weeks. The man, John Rowell ("Rowell"), (1)
then rented the second trailer house from Edmonds. Shortly thereafter, Appellant lost his job and
began to keep what Edmonds considered to be odd hours.

 From his den, where he spent most of his time when he was at home, Edmonds had a clear
view of the two trailer houses. Edmonds had seen the occupants of the two trailers "visiting back
and forth . . . like neighbors [or] friends would do," but he also began to notice things which
concerned him. Edmonds noticed that Rowell would be gone for a few days or a week at a time. 
Edmonds would see Appellant go from his house through the back door of Rowell's house carrying
a briefcase, stay a few minutes, and then return to his house carrying what appeared to be the same
briefcase.

 When Rowell and his female companion, Laurie Little ("Little"), had been living in the
second trailer for two or three weeks, Edmonds went into the trailer to check a leaky window. 
Edmonds saw that there was no furniture in the house except a television and a computer. Edmonds
offered Little the use of an old couch which was stored in the garage adjacent to Rowell's trailer. 
When they went into the garage to get the couch, Edmonds smelled ether and saw two large crock
jars lying open with a fan blowing into them and dozens of empty snuff cans lying on the hood of
an old truck parked in the garage. Edmonds became so concerned about the activities of his tenants
that he contacted a private investigator. 

 With the private investigator posing as an insurance agent or adjuster, Edmonds went into
the two trailers. In Appellant's trailer, they saw nothing unusual. In Rowell's trailer, Edmonds
noticed that the heating and cooling vents had been duct-taped closed and a space heater was hanging
in one of the bedroom closets. There was still no furniture in Rowell's house. Edmonds called the
constable's office. 

 Smith County Constable Dennis Taylor ("Taylor") assigned Deputy Constable Tommy
Goodman ("Goodman") to investigate the suspicious activities on Edmonds' property. Some time
after dark on March 24, 2000, Goodman and Brent Hurst ("Hurst"), who was also a Deputy
Constable at that time, conducted surveillance on the two trailer houses. From behind a group of
large, round hay bales which were located some distance (2) away from the two trailer houses,
Goodman observed Rowell come out of the garage adjacent to his trailer and stir something in a five-gallon bucket with a pole or pipe. Rowell would stop stirring momentarily and "back up like he was
maybe losing his breath." Then Goodman observed Appellant come out of the garage and stir the
contents of the bucket. According to Goodman, whatever was in the bucket "had to be strong or
something was wrong because they kept moving their head back. They were stirring, and they would
step back." As Goodman and Hurst maintained surveillance for more than two hours, Appellant and
Rowell continued to move around in the garage and then come out of the garage, in turn, and stir the
contents of the bucket. Goodman also observed that Rowell went back and forth between the garage
and his trailer house a couple of times.

 Hurst also observed both Appellant and Rowell moving around inside the garage and stirring
the contents of the five-gallon bucket. At trial, Hurst told the jury, 


 The substance apparently was very caustic due to the fact that they had to turn away from it while they
were mixing. Every few seconds, they would have to walk away from it to get a breath of fresh air. 
Apparently, it was either burning their eyes or you couldn't breathe it.



 Hurst also observed both Appellant and Rowell pour something from a plastic bag or paper
sack into the bucket, and Hurst saw Rowell washing out a pan or bucket with a water hose. Hurst
noticed that both Appellant and Rowell were wearing latex rubber gloves. Appellant eventually
went into his house and did not return to the garage, and the officers left the scene. After Goodman
reported to Taylor what he and Hurst had observed on Edmonds' property, Taylor contacted the
Department of Public Safety Narcotics Service. 

 On March 25, 2000, Goodman and Sergeant Charles Garrett ("Garrett") of the D.P.S.
Narcotics Service conducted surveillance on the two trailer houses from the same hidden location
behind the hay bales. That night they saw Rowell and a young woman constantly going back and
forth between the garage and Rowell's trailer carrying plates covered with rags. As the wind shifted
that night, both officers could smell ether. After two or three hours, Rowell and the female went into
the trailer to stay.

 Garrett had observed Appellant sitting in front of the kitchen window of his own trailer house
periodically during the surveillance. Appellant did not go into the garage or into Rowell's trailer that
night, but Garrett told the jury that he believed Appellant could have seen what Rowell and the
woman were doing from his vantage point inside his house. 

 On March 26, 2000, Goodman and Sergeant Andy Dunklin ("Dunklin") of the D.P.S.
Narcotics Service conducted surveillance on Appellant's and Rowell's houses. Goodman and
Dunklin smelled ether and could see people moving in the two trailer houses, but they observed no
suspicious activities that night. 

 On March 27, 2000, Edmonds noticed Wells, Rowell, Combs, and Little outside Rowell's
trailer with several boxes and bags. Rowell was loading the boxes into his van, and it appeared to
Edmonds that Rowell might be moving out of the house. Edmonds called the constable's office to
alert them that Rowell might be leaving, and the constables began to prepare an application for a
search warrant for the rented properties. 

 In the meantime, Appellant and Rowell stopped by Edmonds' house and told Edmonds they
were hauling away trash. As Appellant and Rowell unloaded trash bags at a rural dumping site, they
were detained by law enforcement officers until the search warrant could be obtained and executed. 
The trash bags, which were eventually seized, contained only household trash. However, in
Rowell's trailer, the garage, and a storage building, officers from the constable's office and the
D.P.S. Narcotics Service found methamphetamine, precursor substances to methamphetamine, and
other items typically used in the manufacture of methamphetamine. In the garage the officers found
several bucket-type containers with chemicals in them which were emitting a strong smell of ether. 
They found coffee filters, rags, and a propane bottle with "smoke" pouring out of it. In Rowell's
trailer, the officers could smell "an odor coming from a meth lab." In that trailer, they found scales,
a pill grinder, methamphetamine, and other paraphernalia commonly used in manufacturing
methamphetamine. In the storage building, the officers found that a section had been walled off by
hanging heavy black plastic. Inside the separated space, they found containers, small plastic boxes,
books, and other paraphernalia commonly used in manufacturing methamphetamine.

 Lynette Jonas-Feuquay ("Jonas-Feuquay"), a criminalist at the D.P.S. Crime Lab, was called
to the scene to help the officers collect evidence. Jonas-Feuquay told the jury that filters, funnels,
and strainers such as those found at the scene were typically used in the clandestine manufacture of
methamphetamine. Jonas-Feuquay found 586.72 grams of pseudoephedrine, the precursor to
methamphetamine, at the scene. Jonas-Feuquay found two juice bottles filled with a clear liquid
solvent which could be used to manufacture methamphetamine. Jonas-Feuquay explained to the jury
that the "smoking" propane bottle contained ammonia which can be used to convert pseudoephedrine
to methamphetamine.

 Jonas-Feuquay tested the substances found in two large buckets and determined that one
bucket contained methamphetamine and ether weighing a combined total of 948.93 grams and that
the other bucket was "completely full" of ether. In various containers at the scene, Jonas-Feuquay
found "finished" methamphetamine weighing, along with any adulterants or dilutants, 107 grams,
126.4 grams, and 0.9 grams.

 The officers did not find any methamphetamine or any paraphernalia or precursor chemicals
associated with manufacturing methamphetamine in Appellant's trailer house or on his person. 
However, both Rowell and Appellant were arrested and charged with manufacturing a controlled
substance. (3)

 After Appellant and Rowell had been arrested, Edmonds went back into the two trailers. 
Edmonds noticed that in Appellant's trailer, there was a "cot-type" pallet for sleeping in one of the
bedrooms. There was still no furniture in Rowell's trailer, and the vents were still duct-taped shut
so that no heat or air could have been coming into the living areas of the trailer. There were no
pallets for sleeping in Rowell's trailer, so Edmonds assumed that Rowell and Little had been
sleeping on the pallet in Appellant's trailer all along.


Sufficiency of the Evidence

 In his first issue, Appellant contends that the evidence is legally insufficient to support the
conviction. In his second issue, Appellant argues that the evidence is factually insufficient to support
the conviction. Appellant briefs these issues together. 

 Except as authorized by Chapter 481 of the Texas Health and Safety Code, a person commits
an offense if he knowingly manufactures, delivers, or possesses with intent to manufacture or deliver
a controlled substance listed in Penalty Group 1. Tex. Health & Safety Code Ann. § 481.112(a)
(Vernon Supp. 2002). Methamphetamine is a controlled substance listed in Penalty Group 1. Tex.
Health & Safety Code Ann. § 481.102(6) (Vernon Supp. 2002). 

 In the instant case, the jury was charged on the law of parties. A person is criminally
responsible as a party to an offense if the offense is committed by his own conduct, by the conduct
of another for which he is criminally responsible, or by both. Tex. Pen. Code Ann. § 7.01(a)
(Vernon 1994). A person is criminally responsible for an offense committed by the conduct of
another if, acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code
Ann § 7.02(a)(2) (Vernon 1994).

 Mere presence at the scene of a crime is not alone sufficient to prove that a person is a party
to an offense, although it is a circumstance tending to prove guilt which, combined with other facts,
may suffice to show that the accused was a participant. Beardsley v. State, 738 S.W.2d 681, 685
(Tex. Crim. App. 1987); Barnes v. State, 62 S.W.3d 288, 297 (Tex. App.-Austin 2001, pet. ref'd). 
 To convict a defendant as a party, the evidence must show that, at the time of the offense, the parties
were acting together, each contributing some part toward the execution of their common purpose.
Pesina v. State, 949 S.W.2d 374, 382-83 (Tex. App.-San Antonio 1997, no pet.). While an
agreement of the parties to act together in common design seldom can be proved by direct evidence,
reliance may be had on the actions of the parties, showing by either direct or circumstantial evidence
an understanding and common design to do a certain act. Id. at 383. In determining whether a
defendant participated in an offense as a party, the court may examine the events occurring before,
during, and after the commission of the offense and may rely on actions of the defendant that show
an understanding and common design to commit the offense. Ransom v. State, 920 S.W.2d 288,
302 (Tex. Crim. App. 1994). The accused must know that he is assisting in the commission of the
offense. Pesina, 949 S.W.2d at 382. Intent may be inferred from circumstantial evidence such as
the acts, words, and conduct of the accused. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App.
1995). In determining the sufficiency of the evidence to show an appellant's intent, and faced with
a record that supports conflicting inferences, we must presume--even if it does not affirmatively
appear in the record--that the trier of fact resolved any such conflict in favor of the prosecution, and
we must defer to that resolution. See Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).


Legal Sufficiency

 The standard of review for legal sufficiency of the evidence is whether, viewing the evidence
in the light most favorable to the jury's verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim.
App. 2000). Evidence is legally sufficient to convict a defendant under the law of the parties where
the defendant is physically present at the commission of the offense and encourages its commission
by words or other agreement. Ransom, 920 S.W.2d at 302. An appellate court should uphold the
jury's verdict "unless it is found to be irrational or unsupported by more than a mere modicum of
evidence." Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury is the
exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. 
Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise, reconciliation of conflicts
in the evidence is within the exclusive province of the jury. Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986). 

 Legal sufficiency of the evidence should be measured by the elements of the offense as
defined by the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the particular offense for which the
defendant was tried. Id. Malik controls sufficiency of the evidence analysis even in the absence of
alleged jury charge error. See Gollihar v. State, 46 S.W.3d 243, 252-253 (Tex. Crim. App. 2001). Under the court's charge, which was hypothetically correct, the jury was authorized to
convict Appellant if it found beyond a reasonable doubt that Appellant, as a principal actor,
intentionally or knowingly manufactured methamphetamine in an amount of 200 grams or more but
less than 400 grams including any adulterants or dilutants. Alternatively, the jury was authorized
to convict Appellant if it found beyond a reasonable doubt that Appellant, with the intent to promote
or assist Rowell in committing the offense of manufacture of a controlled substance, solicited,
encouraged, aided, or attempted to aid Rowell in the commission of the offense. 

 Viewed in the light most favorable to the verdict, the evidence at trial, as recounted above,
showed that methamphetamine, in an amount of 200 grams or more but less than 400 grams, was
manufactured at the rental properties and that Appellant was physically present and participated in
the manufacturing process by stirring a bucket containing noxious chemicals. Therefore, we hold
that the evidence is legally sufficient to support the jury's verdict that Appellant, acting either as a
principal or as a party, was guilty of manufacture of methamphetamine. Accordingly, Appellant's
first issue is overruled.

Factual Sufficiency

 When reviewing the factual sufficiency of the evidence, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it with the evidence that tends to
disprove that fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We review the fact
finder's weighing of the evidence and are authorized to disagree with the fact finder's determination. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). This review must employ appropriate
deference to prevent an appellate court from substituting its judgment for that of the fact finder, and
any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the
weight and credibility to be given to the testimony of the witnesses. See Jones, 944 S.W.2d at 648.

 The evidence of Appellant's guilt is not so obviously weak as to undermine our confidence
in the jury's verdict. There was evidence that Appellant aided or encouraged Rowell to commit the
offense of manufacturing methamphetamine. Appellant brought Rowell to Edmonds' property and
provided him with a place to stay for at least two weeks. Even after Rowell moved into the second
rental trailer house, there was never any furniture in Rowell's trailer house. Later, Edmonds found
evidence that someone had been sleeping in Appellant's trailer and assumed it was Rowell and Little. 
Edmonds told the jury that he observed Appellant going into Rowell's trailer house many times. 
Furthermore, Garrett told the jury that he believed Appellant could have seen what Rowell and the
woman were doing on the second night of the surveillance from his vantage point inside his own
trailer house. Most importantly, two officers testified that they saw Appellant stirring some noxious
substance in a large bucket outside the garage, and when a search warrant was executed on the
property two days later, large buckets in the garage were found to contain methamphetamine and
ether. The jury could have rationally concluded that Appellant was soliciting, encouraging,
directing, aiding, or attempting to aid in Rowell's activities. 

 Our neutral review of the events occurring before, during, and after methamphetamine was
manufactured at the rented property does reveal some evidence that Appellant might not have been
a party to the offense. No methamphetamine, precursor chemicals, or paraphernalia associated with
manufacturing methamphetamine were found in Appellant's trailer or on his person. Also, Appellant
did not participate in the activities in the garage on the second night of the surveillance. However,
we must presume that the jury resolved the conflicting evidence of Appellant's intent to solicit,
encourage, direct, aid, or attempt to aid in Rowell's activities in favor of the prosecution, and we
must defer to that resolution. See Matson, 819 S.W.2d at 846. Because the evidence of Appellant's
guilt is not so obviously weak as to undermine our confidence in the jury's verdict and the "contrary
proof" does not outweigh the evidence of Appellant's guilt, we hold that the evidence is factually
sufficient to support the jury's verdict. Therefore, Appellant's second issue is overruled.

 The judgment of the trial court is affirmed.




 SAM GRIFFITH 

 Justice



Opinion delivered July 31, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, Jr., C.J., not participating






(DO NOT PUBLISH)
1. Rowell introduced himself to Edmonds as "John Ridder" or "Ritter" and later identified himself to police
as "John Smith," but it appears from the record that his real name is "John Rowell." 
2. Various witnesses estimated the distance from the hay bales to the trailers to be anywhere from fifty yards
to two hundred yards.
3. It is unclear from the record whether Combs and Little were arrested also.